Case 12-4004 U.S.A. v. James DeMora and Case 12-4051 U.S.A. v. Michael Gabor Court argument, 10 minutes for each defendant, 20 minutes for the plaintiff. Mr. Augusto. Good morning. May it please the court, I represent James DeMora in this case. The jury's task in this case, a bribery case, was to decide whether Mr. DeMora had criminal intent, making inferences from all the circumstances, which is just as this court described in United States v. Terry, the jury's task. But the jury here wasn't equipped to do so. Because of district court errors, it was given an inaccurate picture of the facts, and it was misinformed on the lines that separate federal bribery from not. First, on the facts, central to the government's case was that Mr. DeMora concealed receiving things of value from alleged bribers, and that that showed that they were bribes and established his criminal intent. This concealment point, I take it that's not an element. It's not. That's absolutely correct. It's facts from which the jury could infer, amongst other evidence, that Mr. DeMora had criminal intent or didn't. The government emphasized it in opening and closing statement, making the argument, for example, that people who are taking bribes, they need to keep that a secret. Many of the amounts of money that he received were reported on the official ethics report that he was required to file. Right. The ethics reports don't require him to list the things that he received or the value of them. What they require him to do is list the people that he received things from. If they exceed a certain dollar amount, $100 for things of value, $75 for meals. And he reported all the people listed, all the people that were alleged bribers, except for two, which are noted in our brief. Who were the two that he did not report? Right. The two were Gina Coppers and Kevin Payne. What did he receive from them? The allegation with Ms. Coppers was that he received sex and that she paid for a hotel room when they were in the midst of a sexual relationship. With Mr. Payne, it was that he received limo services that Mr. Payne had sort of a bartering arrangement with, that he received access to a condominium that Mr. Payne had access to. The two out of how many? Well, the government says 15 bribery schemes. 11 people. Right. That's right. And I'd point out those two schemes had some of the weakest direct evidence. Neither Ms. Coppers nor Mr. Payne testified. And there's kind of a 404 effect then with all the rest of the schemes, which is if he's concealing receiving things from all of these people, well, here's two more that he concealed from Gina. This was his main defense? It was his primary defense, as outlined in the opening statement. Tell me what's your view of the hearsay question here? How do you characterize that and exactly what are you saying? It simply wasn't hearsay. He was introducing the forms for the fact that he was disclosing these people. He certainly wasn't introducing them to prove that he did receive things of value from these people or any other assertion that could be gleaned out of the forms. It was for the fact of disclosure. The relevant facts, just to make sure I'm getting the answer to Judge Merritt's question, are one, the fact of filing an ethics report, two, listing names. That's right. Is that it, or listing names as gifts? Is that three? Listing names as people that he received things of value from or meals over those certain amounts. So it's irrelevant that it was under a category that said gifts? Absolutely irrelevant, as far as Mr. DeMora's purpose for introducing it was. If the district court felt that that would be confusing, the fact that it said the word gifts, there would be no objection to eliminating instruction, to redaction. I mean, everything else could be cut away. That's the purpose that he's introducing them. I didn't conceal my relationship that I was receiving things of value from those people, even though the government says I did 60 times through their witnesses. His disclosure form lists 55 individuals that he received gifts from. It varies from year to year. Well, 11 of them are the subject of the bribery, and I guess the other 44 would be maybe legitimate. But the 11 are all intermixed with the other ones. That's right. And it doesn't say what the gifts were for, how much the amount was. All you've got is a bunch of names. That's correct. So that's really not full disclosure, is it? I mean, it's just having 11 names within 55, and it doesn't show a heck of a lot, does it? It shows the exact opposite of what the government told the jury, which is the government 29 times. Those 11 can be buried in here with the 55 and really not pay much attention to it. That's absolutely true, but they're there. And the government told the jury he didn't disclose receiving things of value from these people. 29 times with the words things of value, not with a specific thing or a dollar amount or anything like that. And that was just not true. He wasn't concealing. I assume the trial court corrected that at the end of the trial when that did not or you would get an instruction that, ladies and gentlemen, you may only consider the evidence that was rendered. There was no evidence on whether or not he disclosed it. No. No, there was no instruction like that. Well, there should have been. You didn't request one? He requested. I mean, arguments of counsel are not evidence. No, absolutely. And if counsel for the prosecution says things that are not supported by the evidence, you have a right to have that argument struck from the jury and the jury is. Absolutely. And, yeah, to be clear, the government introduced through their witnesses 29 times he didn't disclose receiving things of value. Through the questions. We compiled a list of questions at the end of the brief. And then argued from that evidence that that established he was concealing from everyone, from the public, from everyone. Were these relationships with these nine people? I mean, this hiding thing seems a little funny. The hiding goes to the hiding the bribes, hiding the conversations. There was no hiding about DeMora's relationship with these nine people. I don't understand the question. I'm just making the point. Tell me which one of the nine everyone didn't know was an acquaintance of DeMora and did business with DeMora. That's not part of their theory. Their theory was the hiding of the phone calls and that it was this clever way of putting things. You scratch my back, I'll scratch yours. That's the hiding. The ethics forms, I don't know how they have anything to do with that. I disagree. And the reason is the questions to the witnesses. It wasn't did he disclose this phone call. It wasn't did he disclose, but it was did he disclose that he received things of value from these people. The government's lead investigator. What you're saying here is that the government's theory of this case of bribery was that he took things of value and he concealed it from the public, from everybody. Everyone. And your response to that is no, he did not conceal it. That's right. The government's theory of the case is wrong and we would like to prove that he did not conceal it. Absolutely. Because he filed all these papers. Absolutely. That's the whole question. Absolutely. And from that evidence, the government. You call this your main defense? I would call it the main defense, absolutely. The main defense goes to something that's not an element of crime. Well, let me be clear. The reason I call it the main part of Mr. Nomura's defense is because it goes to intent. And the other evidence of intent was circumstantial and the direct evidence was weak. That's what seems hard. I still think there's a 403 way of thinking about this, which gets abuse of discretion review. But this idea that the rest of the evidence is weak is pretty astonishing to me. I mean, take the Zavarella scheme. $30,000, a pizza oven, testimony by Zavarella. He was a friend and a political official. I figured if I could help him, I'm sure he could help me. And help he got. I mean, how can you say when that stuff's captured and all this stuff is captured on phone calls. Well, first of all, there's no cash in Zavarella. That $30,000 is the value of what Zavarella did for work. I think you and I would both take it pretty happily. Oh, absolutely. No question. But that also goes directly to, I mean, Zavarella was an established friend, and it goes to the line that separates federal bribery from not, which is his words there don't establish an agreement. They establish that he was hoping Mr. DeMora would help him out if he could in the future. The theory itself shows that you don't have to pinpoint the exact thing you're going to get. Absolutely. And I'm not disagreeing with that, but there still has to be an agreement. You just said something that was consistent with what I was trying to say earlier. Zavarella and DeMora were known friends. Yes. It means nothing to say I got more than $75 from this guy in the air. In terms of why does that prove there wasn't a bribery scheme? I don't understand. It doesn't prove it, but when the evidence of his intent is mixed, I mean, honestly, there were phone calls where DeMora tells someone, I hope you're low because then you'll get the contract, but if not, you won't. The other guy who's really involved in this is Rousseau. That's right. He testifies. I mean, he has on and on about this is how we did things. He's clearly admitting what he was doing involved bribes. Right. DeMora's the other guy doing the exact same thing, and Rousseau's saying this is how it all worked, and you're saying this was a close case in terms of the agreement? Well, they weren't doing the same thing at all. And in this context specifically, I mean, Rousseau admitted to— The same thing in terms of bribes. Well, he admitted to well over a million dollars of schemes that had nothing to do with DeMora. I mean, there's no dispute about that. But secondly, Rousseau concealed all of his bribes on these ethics reports. He put nothing down. That was the way that Rousseau approached this. I'm taking bribes. I need to conceal them. DeMora listed all of these people. And remind me, were Rousseau's ethics forms put in? They were sought to be introduced, but they were also excluded. But they weren't. That's right. So the jury heard none of that. They heard none of this. That's correct. I have a question. Yes. This is a public record. I guess it's just a public record, right? It's a public record. That's right. And why would not the public records or the official records or business records or some exception to the hearsay rule about records? What was said about that, if anything? It was argued below. And the response was that because DeMora doesn't have a duty to report under the way that the public records. It was kept out of being a – because was it said not to be a public record or what? It was held not to be a public record. And we're not arguing that on appeal. I mean, we're arguing that it was – I mean, the form itself is a public record, and that gets the form in. But the statements within weren't hearsay. And so there's no issue. You don't have to go to an exemption or exception. How do you think about the 403 way of thinking about it? In other words, that assumes you're right on the hearsay point. But then you have this, okay, this is complicated. Do we really want to have these mini-trials? And then you have to go to the income and what's not reported as income and on and on. And my response to that is there's no reason we have to get into any of that, first of all. Again, anything else could be cut out. DeMora is introducing this to say, I disclosed receiving things of value from these people. That's it. Everything else could be cut out through redaction, through limiting instruction, anything. And so when the government says, man, this statement here – not the government, the district court says, this statement here, that would confuse the jury. Keep it out. None of the things that she pointed to, DeMora said were crucial to putting in. She couldn't do this without having evidence about what ethics reports are and how they work and what you're supposed to report. And most of that was stipulated to, which is these are the ethics reports that are required to be publicly filed. They're available to any member of the public, an investigator, a journalist, anyone, even anonymously. They're authentic. And, again, everything else. I have to file public ethics reports. That's stipulated to. And on these reports, I disclose receiving things of value from these people, directly contrary to what the government introduced into evidence and what they argued to the jury they should infer criminal intent from amidst other mixed evidence. It's a package. You wanted it with the Russo ones, too. Yes. Absolutely. So that's another whole set of things. It's the same argument. There's no hearsay there. If anything, that shows it more starkly. DeMora certainly wasn't trying to prove Russo didn't receive things. He'd already said he did. He was trying to prove that he concealed them all in there. And the relevance is clear once they're both in, which is if these are supposed co-conspirators and Russo's hiding everything and DeMora's listing everyone, that's a fact. What about the way of thinking about it? I mean, all that it showed was DeMora didn't violate another law. I mean, it's almost a little bit like good character evidence. In other words, it doesn't go. These things do not go to the elements of the offense. And so all this did was show he didn't violate another law. Why is that something a criminal defendant's entitled to get in? It goes to his intent and by the government's argument. The government argued people who are taking bribes, they need to keep that a secret. Their lead investigator, Agent Massey, testified that great measure is taken to conceal these relationships, and he was looking for evidence of concealment of things of value. That's at 22437. And the government, using that same argument, Mr. DeMora could say both, what the government told you, jury, it's wrong. Here, I disclosed these things. I wasn't keeping it a secret. But secondly, using that same argument, people who are bribes need to keep that a secret, need to keep these relationships a secret. I didn't. That same argument, I'm not taking bribes. He didn't disclose these things. All he did was he just had 55 names on there and didn't say what he took. That's correct. How much the value was. It's just a generalized laundry list of people. That's correct, but it includes the alleged bribers who the government argued you would want to secure. If it actually specified what he took from them, it might be a little bit more relevant, that's all. It would be more powerful, no question about that. But it's directly contrary to what the government argued and what they introduced into evidence. Any other questions? Okay. Thank you. May it please the Court, David Oakley for Michael Gabor. I would like to address some of the issues regarding the sentencing of Mr. Gabor. In particular, I would like to direct the Court's attention to the amount of loss calculations used by the District Court and most specifically to the amount attributed to him for the alleged job buy. Mr. Gabor maintains his innocence. He denies that he ever purchased a job. That being said, this was also a RICO predicate act not specifically tried to the jury. All that being said, even assuming that there was enough evidence to support the charge, the government still had to prove the amount of loss. They had to prove the net benefit or loss based upon a preponderance of the evidence and they had to prove that net loss with reliable and specific evidence. The government presented scant evidence at all and certainly did not present any evidence to cover the entire term of Mr. Gabor's employment. Mr. Gabor began in September of 2005. His employment ended in September of 2010. The District Court did 50% of that time period but the government actually presented no evidence whatsoever regarding what Michael Gabor's work was after May of 2008. Additionally, they did not present a single supervisor of Mr. Gabor to testify as to what his duties were or that he ever failed in any of his duties. The government takes great pains in its brief to assert that, well, they had Rousseau testify and Rousseau was kind of a supervisor. Well, Rousseau was two full hierarchical levels above defendant Gabor. He was Michael's supervisor. That gives him more knowledge and authority. Judge, I would argue that it gives him less because he specifically testified that he didn't do a lot of micromanaging. He let the individual managers handle their own departments. He had many departments and it would be impossible for someone at that high of a level to know what some low-level county employee is actually doing. He wasn't on the job either, I guess. Maybe that's the problem. I don't think there's any argument that Mr. Rousseau wasn't on the job, which actually is another one of my points, is later he talks about seeing Michael at pool parties all the time, but Rousseau was the head of the department and I don't recall hearing any allegation that he was not filling that job. If anything, he was working a little too hard on other things, but certainly no suggestion that he wasn't on site. More importantly, though, Rousseau was specifically asked about, does Michael Gabor work out in the field? Well, yes, he does. Michael Gabor worked in the weights and measures department. He would go to grocery stores, he would go to gas stations, check to make sure that the pumps were measuring things accurately. That's what weights and measures is all about. You can't do that job in the county administration building. He didn't have a cubicle there, he didn't have an office space there, he was not required to check in and out every day. I take it Gabor did not put in evidence, it's just a question of how little the government put in? Is that the way this works? Other than on cross-examination, Gabor did not specifically testify, but this is the government's burden of proof. They must prove the amount of loss. You say cross-examination other than cross-examination of Rousseau? Is that what you mean? Oh, cross-examination of Rousseau and the other government witnesses. But mostly this isn't, you can't prove a negative. It would be difficult to prove that Michael was working. He didn't maintain all those evidence, all those records were seized by the FBI. You just have a witness that says, I saw him every day. That's where his office was, he was there. I don't know what they're talking about 28% of his time. He was there 100% of the time. Well, it was the government's burden of proof. That's why I said it the way I said it, that your main point is that they didn't put in enough evidence to support this. Absolutely. Rousseau specifically also mentioned, he mentioned briefly seeing Gabor at pool parties that started at 10 and went into the evening, that some of these were on weekdays. Night or 10 in the morning? 10 in the morning until like 6, 7 o'clock at night. Different testimony. I think Rousseau actually testified they started at noon. But Rousseau worked every day, so if he showed up, I mean, anybody who has a pool party or any kind of party, you know, people don't show up all at the same time en masse. And part of the repeated problem with both Kelly, Pumper, and Rousseau regarding the pool parties, they all testify roughly the same thing. There were pool parties. Sometimes there were pool parties during the week. Sometimes people showed up around 10. Sometimes Michael was one of the people. And so building inference upon inference upon inference, the government argued that Michael was always someone who always showed up at the beginning of every one of these pool parties, that he was always one of the people at these pool parties, and that simply wasn't supported by the evidence. There really wasn't much testimony, if any, that he was ever actually at a pool party when he was supposed to be at work. On any specific date or any specific time, just in general, these parties could have started at 10, and he was there at some point in time. He was scheduled to work until 3.30, so he usually could have been there after 3.30. Plus it was Cleveland, you know. Pool parties, what, three weeks of the year? This year, maybe. This year, maybe. That is an additional part, though. That's probably the most specific objective evidence that the government had regarding Michael's work schedule was these pool parties, and you're correct. There were only a short period of time during the year that that could have been, and only up through, it would really only be the years of 2006 and 2007 and only a portion of those years, so even taking 50% of the summers wouldn't go to 50% over a five-year period. Just remind me where the lines are that would make a difference here. So you have this $242,000 figure. When does this argument become material? Well, fairly quickly, Judge, Mr. Gabor was given a total enhancement of 12 levels based upon the amount of loss. Yes. That's all right. Okay. I do have it. So the $210,000 figure, he's at a 12-level increase. Disregarding the, I believe in our brief we said that at most they showed 10%, that brings him down four full levels, which the way the progressive sentencing guidelines are, once you get up to a certain level, and he started at a 14 for a RICO plus two for a high-level official, so when he's at that level, every additional level is almost a year. So we're really looking at between two and four years based upon the numbers, just on this one issue. We have other sentencing issues we've raised, but just on the amount of loss for the job buy, that's four levels and possibly close to four years additional time in prison. For Mr. Gabor, who was a very low-level county employee, he was very gregarious. He doesn't deny that he hung out with these people after hours. Can't deny that in terms of Russo, Kelly, and Pumper that he had bad choice in friends, but the actual evidence coming in regarding his work was insufficient to carry the burden. I see that my time is up, so unless there are additional questions. Thank you very much. Okay, we'll hear from the government. May it please the Court, Antoinette Bacon, I'm Senior Litigation Counsel for the United States Attorney's Office for the Northern District of Ohio, and I'm the Lead Trial Counsel on this case on behalf of the United States. Judge Loyoy, the judge in this case who spent 37 days presiding over trial, found that the breadth and depth of DeMora's corruption was staggering. The reach of his corruption was far and wide. He prevented others from having any opportunity to play on a level field and caused businessmen caught in the schemes to lose their livelihoods and their liberty. The court found that this is exactly the type of conduct that undermines the public's confidence in their government. Counsel, would you agree that his main defense, DeMora's main defense was that he had no intent to take a bribe in his narrow view of what a bribe was or intent, and that as a part of that defense that he had no such intent that the government's theory that he hid or concealed receiving things of value was an error. Would you agree that that was his, maybe he didn't have much of a defense, but that that was his main defense? There were two primary defenses, Your Honor, which themes permeated trial. The first was that the government's witnesses who pleaded guilty to their participation in corruption were all liars. And the second was that it was friendship, that these things of value DeMora received over 10 years was friends. The part that was that he had no intent to take a bribe. That's correct, Your Honor. Those were the two themes repeatedly expressed throughout trial. Would you agree that preventing the ethics reports from coming in pretty much undermined that defense that he had? Absolutely not, Your Honor. Absolutely not for several reasons. First is, the court did not wholesalely exclude these exhibits, these out-of-court statements of Commissioner DeMora. The court said not this way, that DeMora tried to introduce them one way and one way only, and that was to admit them, offering them for the truth of the matter asserted, based solely on an authenticity stipulation. And that based on that alone, without the opportunity for cross-examination, the court found that they would be, it was one, rank hearsay, and two, the prejudicial value. It's not hearsay if it's not admitted for the truth of the matter asserted, is it? That's right. But if not offered for the truth of the matter asserted, they're wholly irrelevant to this trial. The issue in this trial never was that DeMora hid his associations. The government conceded DeMora did not hide his associations. The case agent, Special Agent Mike Massey, testified at... You're saying that because the government conceded these things, that he would not be permitted to prove them. The government really went to great effort to keep all this out, about his disclosing this on these ethics reports, right? To keep them out this way, Your Honor. To keep them out the sole way that the defense tried to admit them, and the reason was because they were... Why did you want him to prove it then? There were several ways that the trial counsel for Defendant DeMora recognized they could be admissible, as did Judge Leoy in her many thoughtful, detailed, fact-intensive rulings on this issue. But the fact of the matter is, DeMora didn't want them admitted another way, because he understood that when the government would have an opportunity to explore these documents on cross-examination, the jury would understand that these were inculpatory, not exculpatory. Because the forms did not just... If he could get this in, it looks like a simple situation to me. If he could get this in, these ethics reports in, he at least would have an argument to combat the argument that he was concealing all of his activities with respect to these people. And the government never argued he was concealing all of these activities with respect to the people. Indeed, looking at the record, I would cite, Your Honor, to just three examples. Let me rephrase that. He was concealing much of his relationship. He was concealing, Your Honor, for example, at 23796 in the record, when Kevin Kelly called about Chyla, did he disclose that he returned from Las Vegas? The answer was no. It was a very specific bribe that the government questioned. At 23713, did DeMora disclose to Sweeney that you, Ferris Kleem, had just given him a Rolex watch, a refrigerator, and a TV? The answer was no. It was very specific bribes about which these witnesses were questioned. Another example is found in Mike Massey's testimony at 23080. Mike Massey was a lead case agent, Your Honor, who testified. I believe my colleague here summarized his testimony. And the agent did not say it would be easier if the subject disclosed all associations. Agent Massey testified at 23080. It's not necessarily the associations. It would be easier if they had disclosed the official acts done in return for the things of value. So the issue was not whether or not DeMora broadcasted to the public he was out to dinner with these people. Indeed, the government produced ample evidence that that was one of DeMora's main bribes, such as the $4,000 dinner party that Ferris Kleem hosted at Majorca and the $826 dinner party that AA sponsored. That's a great way to think about this. I mean, obviously there was concealing, but the concealment didn't go to the friendship. The concealment didn't go to the fact that these friends did things for each other. The concealment goes to whether there's an agreement, which is, of course, the whole point of a bribery. Is there a quid pro quo? So that's the concealment part, but that has nothing to do with the ethics reports. That's right, Your Honor, and that's why they're wholly irrelevant and why the district court did not abuse its discretion in finding that admitting them based on authenticity alone was one rank hearsay and too overly prejudicial. One thing, at least based on my reading of the record, I wonder if you overstated things in responding to Judge Merritt. I mean, I agree with you initially. In fact, I thought initially she said they can come in. You just got to figure out a way to do it right. Then when they tried, they couldn't seem to get agreement. But I will say by the time they're closing, their case is over, when you look at that conference, it does seem to be a case focused down to all we want is we just want the reports filed, we're not using them for the truth of the matter, and we want to just say we acknowledge these names. So I don't know, I feel like when you get to that, it seems to me their hearsay argument's a little better at that point. Not much better, Your Honor, and for these reasons, the government offered to redact the names, and at transcript number 27166, the defense demurred. Redact which names? What do you mean? Redact the names. The defendant repeatedly explained to the district court three different times the primary purpose of these forms was to show he did get meals from these certain persons, which was the truth of the matter asserted, namely that these persons were the ones who gave him these things, and critically important, Your Honor, was it was meals in connection with his government business and gifts, parens not bribes, from these other people. And when we offer to redact the names, or to suggest perhaps that every name was replaced with John Doe, the forms no longer become relevant, and that's how we know. Maybe I just don't understand hearsay law, but I guess I had an instinct that they were right about two things. They could get in the fact of filing, because that's not that the document's true. The only point is it was filed, and here's what that means under Ohio law. Then the second thing was the fact of identifying names. Why couldn't they get in the fact of identifying these names in an ethics report? Because that's hearsay. The truth of the identity of the person who gave that gift or gave the meal in connection with government business is hearsay. No, the truth is, but the purpose is that he filed it. Whether or not it's true, he listed these people, and that's not hearsay. That's an act itself, irrespective of the truth, and they say it has relevance because it goes to the fact that he didn't conceal the names. And that's two parts, Your Honor, and this is where the district court did not abuse her discretion in finding that the forms would be overly confusing and would mislead the jury. Well, that's another issue. It's part and parcel, Judge Griffin, of your question, which is that the fact of whether or not he filed a form is a fact not at issue in the case, at least not an element of the offense, and it's not a defense. You didn't concede that he listed these 9 or 11 names on his disclosure form. In fact, you fought it very hard. We fought it this way, Your Honor, the way that he wanted to introduce it with the opportunity for cross-examination. A critical factual difference in this case is it's not that he just omitted two bribe payors. He omitted Kevin Payne, Samir Mohammed, Gina Coppers, and every single company that gave him things of value. Most bribe payors were the companies. So the fact that he listed some individuals who may also have given him gifts  You could argue that to the jury, point that out, but that doesn't mean that it's not hearsay. I mean, you're going away from the questions we're asking. All of that is another argument to be made to the jury. Well, it's harmless error. I mean, that's the harmless error. Well, okay. Yes, there are two harms. First of all, I don't think it's hearsay. I think they're correct. It's not offered to prove the truth of the matter asserted. It's offered to prove that he listed the names irrespective of whether they gave him gifts or not, whether the gifts are legal or not. So I think the judge is wrong by keeping it out on hearsay. But then the second thing is she also ruled under a 403 analysis that the probative value is substantially overweighed by the danger of unfair prejudice, which I think you're a little better footing on here. But, you know, you're the trial counsel here, and you know this is going to be an issue. You have a lot of evidence against these guys, and I'm just kind of surprised that you fought so hard to keep this document out when it may or may not have made any difference. And you created the appellate issue here. And if you had let it in and let the chips fall where they may, we wouldn't have much to argue in this case. But, I mean, you're the one that did it here. Your Honor, I agree with you that the strength of the evidence is such that it would not have made a difference. Well, then I'd try to see why you fought so hard to keep it out. We didn't try so hard to keep it out, Your Honor. We fought hard to keep it out the way they wanted it admitted. It's critical the district court's findings of facts and judgment on this, and I invite Your Honors to read those, especially at document 930 and her response denying the motion for a new trial. It's that the way they wanted them admitted without any witness to test the credibility of this document and explain it would have been so confusing, would have misled this jury, would have brought us down this rabbit hole. And it's critical to remember, Your Honor, this is a 37-day trial of 8 to 6 trial days, 8 o'clock in the morning to 6 at night. The judge understood better than anyone what putting this form, this pre-printed form, would do to the jurors. And her first concern was that while the statement warns that disclosure does not equate with compliance, it suggests that disclosure equates with transparency. In doing so, the statement would have the effect of usurping the jury's province by suggesting the Ethics Commission has already passed on this. She had four other reasons why the court believed that this was going to be so far afield, especially when, Your Honor, he did not list every bribe payor. For some of them, he didn't list every year. The government was ready to produce evidence, and we put this on the record, that defendant only started hand-delivering these forms following the decree. It's all for the jury's consideration. After it comes in, after there is final argument, all the proof is in, it's all, you know, he's entitled to trial by jury. He's entitled to make his defense under due process of law. And this, as Judge Griffin says, it may not be a very good defense, but you are preventing him from offering the main defense he's got. Respectfully, I disagree, Your Honor, because the federal rules of evidence provide that the district court should be a gatekeeper, and they charge a district court for being a gatekeeper on evidence that is otherwise inadmissible. Chambers v. Mississippi said the federal rules of evidence apply to both sides, and that is the district court's duty, it was her duty, to ensure that the defendant did not lead this jury down a road that was completely irrelevant to the issues at trial. He had other ways to get these forms into evidence. His own counsel admitted that, Your Honor. What could he have said to the court and gotten them in? How could he do that? Your Honor, his own counsel explains it at Record Site 22276, that there are very well times about the issues of the ethics forms that will arise during the government's case, and we would like to use the forms, and the courts established a protocol. Moreover, the district court recognized... What did the court say to him about how you could get them in? She said that if you lay the proper foundation first, approach the bench... What did she say the proper foundation is? This is all abstractions, counsel. What specifically? She said near the end of the case, as Judge Griffin was referring, that this was a moving process. At the end of the case, she said, it's not only through your own client's testimony, which is one way, but there are also innumerable other ways that I can imagine, but my job is not to tell you, counsel, how to try your case. Your job is to present an evidentiary ruling, or an evidentiary issue, and my job is to rule on it. She said, I'm not going to tell you, but let me tell you, there are ways to get this in. One way, Your Honor, that was suggested on the record was through her own client's, through DeMora's testimony, and the court recessed, sent the jury home, considered the issue for the night. This was not a fly-by-the-seat-of-the-pants ruling. The court recessed to take careful time to consider the issues, called counsel that evening, late into the evening, to give the ruling, and again gave the defendant extra time to consider the different ways. The counsel had said it's not admissible. To say that it's not admissible this way, not this way. What way would have been admissible? There are several ways, Your Honor. One, obviously, is through the defendant's own testimony. The second could be through cross-examination of the people who gave him the things of value. He could have impeached Steve Pumper or Ferris Kleem and said, How do you bring in DeMora's ethics report over somebody else? I mean, they don't know what it is. They can't authenticate it. You can't, it hasn't been admitted in evidence. I mean, you can't, that doesn't seem like that works. Which raises the point, Your Honor, that this ethics statement, this out-of-court statement, was no different than the defendant's interview on CNN giving his version of the facts. Is his interview in the record somewhere? No, it isn't, but there are several, Your Honor. Then tell us about it. He was a gregarious character and certainly gave many interviews with the news media on Zabarella, in fact, in the days leading up. I just want to make sure I understand why you said something earlier, which bears on 403 harmlessness, okay? Yes, Your Honor. You said that even when he did identify certain names of alleged bribers, he didn't do it every year. That's correct, Your Honor. Okay, so tell me what you mean by that. How many, because, I mean, that's the one inquiry about harmlessness is you would have opened the door to devastating, in other words, it would have been very hurtful at the end of the day. That's obviously true as to two people that are not mentioned on ethics reports. Three, Your Honor. Three individuals, Your Honor, yes. Okay, so that's been covered. That leaves eight left. How many of the eight were there missing years of their names being mentioned when they should have been mentioned given the testimony in the case? With respect to years, Your Honor, Kevin Kelly, John Valentin, and Rye Breibach had missing years, but also it is critical to understand that the bribe payers. So that would be six people that would be a discrepancy between the evidence and trial and what was done in the ethics report? Yes, Your Honor. Then you said something about companies. Yes. So the ethics reports require companies to be listed? No, Your Honor. And indeed, well, I should not say that I did not read the ethics report closely enough to know whether or not a company is required to report, but most of the bribes came from companies in this case. So I'm not sure we're communicating with each other. Would DeMora, under the ethics rules, have been required to list a company providing a dinner? I do not know that, Your Honor. But what I do know is that most of the bribes in this case came from companies. And to illustrate, Ferris Kleem was one of the people listed on the ethics report. But some of the bribes, most of the bribes, came from Kleem's businesses. Same with Pumper. The work being done on DeMora's house was the work being done by DAS Construction. The loge tickets came from DAS Development, and none of those were listed. A rough estimate of the alleged bribes and what percentage came from companies versus what percentage came from individuals as opposed to the individual using his or her company? It's most, Your Honor. It was most. More than 50 percent. Well over 90 percent. Thinking of the individuals offhand that gave things, just the individuals offhand that gave things a value, Gina Coppers paid for the hotel room and obviously gave sexual services. She's one. Pumper and Kleem sometimes reimbursed their companies for the work, so that could have been an individual that would have given it. Charlie Randazzo's came from Financial Network of America, which was his company. Zavarella came from Zavarella Brothers Construction. John Valentin's came from Salva Stone. The bribes came through the individuals from the companies. Not always, Your Honor, no. Indeed, with Zavarella, Andrew Lavecchia did the work. Not always. Most times not, Your Honor. But the company couldn't talk for itself. It had to operate through individuals, right? That's correct, Your Honor. And it's noteworthy that the individual bribe payers in many of the cases, in all of the cases except for John Valentin, were not the sole owners of the companies. And with respect to Ferris Kleem, he was one of the either equal or slightly minority partner in one of the companies, Phoenix Cement, which was trying to receive and did receive one of the JJC contracts. So these are not just individual sole proprietorships with the exception of Salva Stone, which was the Brock issue that was raised in this case. So these forms, to Judge Sutton's point, Your Honor, is that even if they would have been admissible, they are not the keys to the kingdom because the government not only would have produced evidence that the forms are incomplete, but also critical testimony as to Demora's knowledge that the information on the forms was incorrect. The government had two exhibits marked in the rebuttal exhibits, and we intimated these to the district court, that following the Nate Gray prosecution, a case with which this court is familiar, Demora received an email that says Joe Jones was prosecuted because he had false statements on his ethics reports, and he mailed them. Next time you have an ethics report that is incomplete or misleading, make sure you don't send it through the U.S. mails. Following that email, every single year, Demora hand-delivered those forms, which would have been critical evidence to the jury to show that Demora wasn't, in fact, disclosing everything to everybody. That would be only if you could get the report in. Then you could argue about that. That's correct. Together with the fact that we would have had a witness from the Ethics Commission to say that if these were bribes, and he properly reported them as bribes, they should have been under the income section and not the gift section, which was another critical fallacy in the reports. So argue that if they had gotten in. Yes, Your Honor. And that's all what the government briefed in limine. To go to Judge Griffin's point, we were trying to avoid a problem, and briefed in limine the type of evidence the government would submit in rebuttal to avoid any surprise to the defendant. So he had time to decide whether or not an opening statement he wanted to mention those forms. And with regard to Your Honor's question about Truth of the Matter Asserted, I'd invite you to reread the opening statement of counsel at 22675, where Demora said that people gave him gifts, people bought him dinner, and those are the people he put on his ethics report. In their opening statement, they admitted it's for the Truth of the Matter Asserted, that he is disclosing all of this, when, in fact, the government's point was not that he concealed friendship, that he concealed the bribes. And I'm saying I'm out of time without time to respond to the sentencing issue raised by Defendant Gabor. Why don't you just... So you put in all these witnesses that seem to have these kind of very rough estimates. I mean, it does seem kind of a close case, because, I mean, it's a preponderance, but you do have to put the evidence in. So, I mean, what's the best piece of evidence, best place for us to go to get a comfort level with this estimate? I realize it's an estimate over 10 years. None of this was going to be easy, no matter what you had. But what's the best witness or best place to look? Our best place is to look to show that the District Court did not commit clear error following her half-day sentencing hearing on this case, Your Honor, is 26207, which was trial testimony, where Michael Gabor told Kevin Kelly, I work an hour or two a day for Frank Russo and spend most of my time working for DeMora. That's the defendant's own statement. The second best is the statement, the testimony of Frank Russo, where he said, this job didn't exist. I created this job knowing there was not enough work to do, knowing that Gabor would have, quote, a new life, which is what he wanted, because he was slaving away in the deli. And, indeed, that could have proven or could have supported a District Court's finding that 100% of the salary was the lost figure. Okay, I think that's the answer to my question.  Are there any other questions? No. Okay, thank you. Thank you, Your Honors. I appreciate the argument. Counsel, before you start here, were I to agree with your position that Judge Loyoy made an error in excluding DeMora's ethics report as opposed to Russo's, why would not that error be harmless error in view of the overwhelming evidence of the government produced against your client? Right, and that's... Okay, tell me why it would not be harmless error, assuming she committed error. There's sort of two ways to look at it, I think. One is the government's own statements and the District Court's own statements during trial, which is the government said there are evidence of concealment, which was asking, did you disclose things of value? You heard the way I looked at it. I mean, I think you're saying conceal that is the way you keep saying. And it's not... The concealment does not go to the friendship. Everyone knew they were friends. I don't even think there are doubts they're having meals together. It's concealing the key thing with a bribe, the quid pro quo. I want to be very clear on that, too. The government tried to establish criminal intent by asking questions and then arguing to the jury, did he disclose that he received things of value? Sometimes specific things of value, but 29 times not. Not just did he disclose the arrangement. But it was almost in the context of you just awarded the contract. What happened the weekend before? That was the Vegas trip. The ethics reports do nothing with that because the whole point is timing. That's what shows, that's what's the circumstantial evidence of an agreement. Absolutely. And the timing is another issue. Absolutely. And the timing varied widely. We summarized this in our brief. Sometimes it was a lunch meeting that led to a call, what's going on with this contract? Sometimes it was years after or before. But the district court observing all of this in response to defense's objections when they're asking, did he disclose these things of value? Observed, I understand it's important to the government's case to be able to indicate there wasn't any disclosure of the things of value. That was the district court's observation watching this happen. They had so much other evidence here. Well, that's... Why, okay, if it's... Right. We don't reverse unless the error affects the verdict. Absolutely. So tell me how this error affects the... That's my first point. When you have all the other evidence that properly came in, tell me how this would tip the balance. And that's my first point, which is the district court itself said this was important, observing everything at trial. The second point is we can go through, I mean, scheme by scheme, point by point, but the general point is there were all these phone calls, 44,000 over 1,500 hours. There's not a single one, not a single one where there's a discussion of an agreement, which is by itself... The district court are not about agreements. No, absolutely, but we're all about... We're all about inferring intent. Did he have criminal intent or not? There was no agreement there. So then it was testimony. As we pointed out in our brief, most of the witnesses did not say they had an agreement, that they had any discussion with DeMora where they said, I'll do this for you if you do this for me. There were some that did. They had significant credibility concerns. So, again, we're looking at all the circumstances. We're trying to infer intent. What is our standard of harmless error here? What's that? What is our standard of harmless error? We cited this court's decision in Haywood and Covington, which says unless the court is sure that the error didn't have an effect on the verdict, then it should reverse. That's not beyond a reasonable doubt. It's not beyond a reasonable doubt. It's a reasonable probability. And I'd point out within... It is a reasonable probability, isn't it? It's whether the court is sure that it didn't have an effect on the verdict. Well, sure doesn't... Okay, probability is standard. It's a reasonable probability. There's a few different standards expressed, honestly. They're all getting at, did this have an effect on the verdict? I agree with that, yes. An ethics report... I'm sorry. Keep going. And the judge has got to be confident that one or two or three jurors would not have picked up on that. Exactly, right. After it was promised an opening statement and then not delivered on top of that. But to respond to your question still, Judge Griffin... It was promised by defense counsel an opening statement? It was. You hadn't gotten a ruling from her that... There was a motion in Lemonet where the government argued that these should be kept out. I know. And then the court ruled that he could get into this. And in response to that, they said in an opening statement, we're going to show you his ethics reports. Right, and I can address those arguments if you'd like. I think they're set forth in our briefs. So what's the rule on ethics reports in terms of gifts from companies as opposed to individuals? You don't have to identify companies? No, you have to report the giver. That's absolutely true. Okay, so just to make sure... I think you're going to answer the right question, but just to make sure. Let's say it's 2 to 3 of the 9 individuals not identified. And it sounds like companies weren't identified. What's your answer to that point? The government's own case was that these things came from these people. That's what they told the jury. It's only after, and it's only actually on appeal, that the government's... But if a check is from a company, that's a violation of the ethics rules. Absolutely. So that's going to... If there was a check from a company, I would agree with you. There's not. There's people doing work. There's travel. Where those people build those things to is separate. But if a company comes in and builds the pizza oven and does the porch and does all that stuff, the company bills, the company doesn't insist on payment, how is that not something that's supposed to be disclosed in the ethics report? Absolutely, it would be. If it's clear to DeMora that the company's doing things, but the government's own case and their own arguments, and we recited this in our briefs, was that these people were giving him things, or they used it interchangeably. Was he getting something from Zavarello or his company? So the jury's been told he got things from the people, not the company. Yeah, but so far as you can say, all we care about is who hands it over. Oh, absolutely. I understand that entirely. Companies don't have hands. I understand that. My point is... But you would be opening the door to that, and then you'd be opening the door to the fact that he didn't do it every year. Well, and that's a different... I'd like to address both of those if I could, yes. If three individuals weren't accounted for in years, they should have been given the evidence at trial. Explain why that's wrong. Certainly. Kelly, first of all, what counsel is referring to was an uncharged pre-indictment incident. Mr. DeMora didn't challenge the testimony at trial because it wasn't relevant. He testified, we took this trip. He didn't cross-examine him. But wait, the government, if you'd let this in, would have been able to say, he says he discloses everything. He didn't disclose everything. That, he's not... The purpose for these isn't, I'm disclosing everything always. It's, I'm disclosing these very people, the very things charged. I think that would have been very fortunate to have it go that way. That you could... They couldn't argue these other things? No, I understand. The government could actually absolutely come in and argue to the jury. Well, on this unindicted thing, from before the indictment period, he didn't disclose that. DeMora would say, okay, I'm fine with that. What I'm saying is that you didn't get an opportunity to go into any of this. That's true, too. None of it was in evidence. That's absolutely right. With Mr. Valentine, Mr. Valentine wasn't sure about when he did work for Mr. DeMora. So, there were two years disclosed. Mr. Valentine said, I think it was 2006 and 2007. He was disclosed 2007 and 2008. Again... It runs in their direction. No, but again, if the government wants to say, it's obvious he's not disclosing 2006, the response from DeMora would be, well, he wasn't sure. He disclosed in 2007 and 2008. He's not hiding it. He's getting things from him. And then, with Ryback, I'm not sure what counsel's referring to. I don't recall it in the briefs. As to whether there was evidence... My impression was that Mr. Ryback was disclosed on the forms in every year, and I don't recall any argument to the contrary. But, I mean, my general point, Judge Griffin, to answer your question still, originally, is with all of this, there was evidence from which a jury could infer criminal intent. But we're not arguing sufficient evidence with most counts. But there was also countervailing evidence. We cited some in our briefs, the phone calls where DeMora says, well, I hope you're low. Then you'll get the contract. But not if you're not. But when the jury was weighing this evidence, it was left to ask, but why would he conceal these things if they weren't bribes? And with credibility determinations, with inferences, that would tip the balance for me. But he wasn't able to say, I didn't, I put them down. And that's why we'd ask you to reverse his convictions. Thank you. Thank you very much. Mr. Oakley, do you have a little rebuttal here? So it sounds like there was some testimony from your client on this issue. What Ms. Bacon was referring to was a telephone call that was intercepted. Actually, no, not a telephone call that was intercepted. She was referring to a comment that Mr. Kelly made, which I would say was not only the best evidence, but the only evidence the government presented, which was support the across-the-board figure. The question was, did Michael ever tell you, specifically in the time frame of 2005 to January of 2008, what hours Mr. Gabor actually worked in the Weights and Measures Department? And he was, and the question was, what types of things did Mr. Gabor tell you about his work schedule? Answer, he was basically working an hour or two a day. That's it. That is the only evidence that could possibly support an across-the-board number. We don't have any idea what the context of this conversation was. If it was even made, Kelly testified that... About the statement that this wasn't even a job, it was just invented. Was there a statement along those lines? I believe Russo said that there wasn't an opening. The fact remains that it is still the net loss that the government must show. Gabor did get a job. He definitely worked in Weights and Measures. There was no question about that. Russo testified that Michael did work in the Weights and Measures Department. The two cases that the court relied upon, United States v. Burns, and I forget the other case, but correctly determined that in a bribery type of situation, you do look at, you still use the same rule that you look at the net benefit or the net loss. And here, that would be the difference between the salary that Michael Gabor was earning versus the time that he wasn't actually working. And it was the government's burden to prove that there wasn't a loss. And this isn't a question of two different views of the evidence. This is a question of no evidence at all being presented, which would support 50% for a five-year period. If there are no further questions. No, thanks to all three of you for your helpful briefs and oral arguments. We really appreciate it. We'll work through the case, and thank you. Case will be submitted. The clerk may call the last case.